# United States Court of Appeals
# for the Federal Circuit

---

WALKER DIGITAL, LLC,

Plaintiff-Appellant,

v.

EXPEDIA, INC., and AMAZON.COM, INC., and
AMERICAN AIRLINES, INC., and ZAPPOS.COM, INC.,

Defendants-Appellees.

---

## 2013-1520, 2014-1080

Appeals from the United States District Court for the District of
Delaware in case no. 11-CV-0313, Judge Sue L. Robinson.

-------------------------------------------------------------------------

WALKER DIGITAL, LLC,

Plaintiff-Appellant,

v.

AMAZON.COM, INC.,

Defendant-Appellee.

---

## 2013-1521, 2014-1077

Appeals from the United States District Court for the District of
Delaware in case no. 12-CV-0140, Judge Sue L. Robinson.

*Continued on inside cover*

WALKER DIGITAL, LLC,

Plaintiff-Appellant,

v.

BARNES & NOBLE, INC.,

Defendant-Appellee.

─────────────────────────

2013-1522, 2014-1090

─────────────────────────

Appeals from the United States District Court for the District of Delaware in case no. 12-CV-0141, Judge Sue L. Robinson.

---------------------------------------------------------------------------------------

WALKER DIGITAL, LLC,

Plaintiff-Appellant,

v.

EXPEDIA, INC.,

Defendant-Appellee.

─────────────────────────

2013-1523, 2014-1081

─────────────────────────

Appeals from the United States District Court for the District of Delaware in case no. 12-CV-0142, Judge Sue L. Robinson.

## NON-CONFIDENTIAL BRIEF OF DEFENDANTS-APPELLEES AMAZON.COM, INC., ZAPPOS.COM, INC., EXPEDIA, INC., BARNES & NOBLE, INC. AND AMERICAN AIRLINES, INC.

Klaus H. Hamm
Jeffrey S. Love
Kristen L. Reichenbach
Philip Warrick
Garth A. Winn
KLARQUIST SPARKMAN, LLP
One World Trade Center
Suite 1600
121 S.W. Salmon Street
Portland, OR  97204
(503) 595-5300

*Counsel for Defendants-Appellees*
*Amazon.com, Inc. and*
*Zappos.com, Inc.*

John B. Campbell
MCKOOL SMITH, P.C.
300 W. 6th Street
Suite 1700
Austin, TX  78701
(512) 692-8700

*Counsel for Defendant-Appellee*
*American Airlines, Inc.*

Philip A. Rovner
Jonathan A. Choa
POTTER ANDERSON
 & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE  19899
(302) 984-6000

*Counsel for Defendant-Appellee*
*Barnes & Noble, Inc.*

Ahmed J. Davis
Linhong Zhang
FISH & RICHARDSON, P.C.
1425 K Street, N.W.
11th Floor
Washington, DC  20005
(202) 783-5070

*Counsel for Defendant-Appellee*
*Expedia, Inc.*

Neil J. McNabnay
FISH & RICHARDSON, P.C.
1717 Main Street
Suite 5000
Dallas, TX  75201
(214) 747-5070

*Counsel for Defendant-Appellee*
*Expedia, Inc.*

May 12, 2014

FORM 9.   Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

WALKER DIGITAL, LLC _____ v. EXPEDIA, INC. _____

No. 2013-1520 _____

# CERTIFICATE OF INTEREST

Counsel for the (~~petitioner~~) (~~appellant~~) (~~respondent~~) (appellee) (~~amicus~~) (name of party)
AMAZON.COM, INC. and ZAPPOS.COM, INC. certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

AMAZON.COM, INC. and ZAPPOS.COM, INC.

_____

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

Not Applicable.

_____

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

AMAZON.COM, INC. has no parent company, and no publicly held company owns 10% or more of Amazon.com, Inc.'s stock.
ZAPPOS.COM, INC. is 100% held by Amazon.com, Inc.

_____

4.  ☑   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

See Attachment A.

_____

July 31, 2013 _____          /s/Jeffrey S. Love _____
           Date                                  Signature of counsel

                                         Jeffrey S. Love _____
                                              Printed name of counsel

Please Note: All questions must be answered
cc: _____

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

WALKER DIGITAL, LLC v. EXPEDIA, INC.

No. 2013-1520

CERTIFICATE OF INTEREST

ATTACHMENT A

The names of all law firms, partners, and associates that have appeared on behalf of Amazon.com, Inc. and Zappos.com Inc. in the U.S. District Court, District of Delaware, Case No. 1:11-cv-00313-SLR are:  Klarquist Sparkman, LLP attorneys Jeffrey S. Love, Todd M. Siegel, Garth A. Winn, Klaus H. Hamm, Salumeh R. Loesch, Philip Warrick, Elisabeth W. Bechtold, Kristen L. Reichenbach and Carla Todenhagen; Potter Anderson & Corroon, LLP attorneys Richard L. Horwitz and David Ellis Moore; Latham & Watkins LLP attorneys Richard G. Frenkel, S. Giri Pathmanaban, Gregory G. Garre, Daniel Meron, Matthew J. Moore, and Gabriel K. Bell; and Fenwick & West LLP attorney J. David Hadden.

The attorneys who will appear in this Court are:  Klarquist Sparkman, LLP attorneys Jeffrey S. Love, Klaus H. Hamm and Garth A. Winn.

Dated:  July 31, 2013

KLARQUIST SPARKMAN, LLP

/s/Jeffrey S. Love

Klaus H. Hamm
klaus.hamm@klarquist.com
Jeffrey S. Love
jeffrey.love@klarquist.com
Garth A. Winn
garth.winn@klarquist.com
Klarquist Sparkman, LLP
121 SW Salmon Street, Suite 1600
Portland, OR 97204
Telephone:  503-595-5300
Facsimile:  503-595-5301

FORM 9.   Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Walker Digital, LLC _____ v. Expedia, Inc. _____

No. 13-1520

# CERTIFICATE OF INTEREST

Counsel for the (~~petitioner~~) (~~appellant~~) (~~respondent~~) (appellee) (~~amicus~~) (name of party)

American Airlines, Inc. _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:

American Airlines, Inc.

_____

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

_____

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

AMR Corporation

_____

4.  ☑   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Novak Druce - Chad Sover
McKool Smith, PC - Mike McKool, Phillip Aurentz, and Bradley Caldwell

_____

10/3/2013 _____
Date

/s/ John Campbell _____
Signature of counsel

John B. Campbell _____
Printed name of counsel

Please Note: All questions must be answered
cc: All Counsel of Record Via CM/ECF _____

FORM 9.   Certificate of Interest

---

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Walker Digital, LLC                    v. Barnes & Noble, Inc.

No.  13-1522, 14-1090

## CERTIFICATE OF INTEREST

Counsel for the (█████ █████) (█████ (appellee) █████ (

Barnes & Noble, Inc.          certifies the following (use "None" if applicable; use extra sheets if necessary):

1.      The full name of every party or amicus represented by me is:

Barnes & Noble, Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

None

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Liberty Media Corporation, a public company, through its wholly-owned subsidiary Liberty GIC, Inc., owns 10% or more of Barnes & Noble, Inc.'s stock.

4.   ☑   The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Philip A. Rovner, Jonathan A. Choa, Alan R. Silverstein, all of Potter Anderson & Corroon LLP

May 12, 2014                              /s/ Philip A. Rovner
Date                                      Signature of counsel

                                          Philip A. Rovner
                                          Printed name of counsel

Please Note: All questions must be answered

cc: All counsel of record by US mail, E-mail and CM/ECF

Form 9

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

Walker Digital, LLC _____ v. Expedia, Inc. _____

No. 2013-1520

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (appellant) (respondent) (appellee) (amicus) (name of party)
Expedia, Inc. _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:
Expedia, Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:
Expedia, Inc.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:
Liberty Mutual Corporation, a publicly traded company, indirectly holds 10% or more of Expedia, Inc. (DE) common stock

4. ☑ The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:
Ahmed J. Davis, Linhong Zhang, Neil McNabnay, William J. Marsden, Jr., Gregory R. Booker, Warren K. Mabey, Gabriel Olander from Fish & Richardson P.C. appeared for Expedia in the trial court.
Ahmed J. Davis and Neil McNabnay will be entering their appearance in this Court.

8/5/13 _____
Date

/s/ Ahmed J. Davis _____
Signature of counsel

Ahmed J. Davis _____
Printed name of counsel

Please Note: All questions must be answered
cc: Counsel of Record _____

124

# TABLE OF CONTENTS

**Page(s)**

CERTIFICATE OF INTEREST
AMAZON.COM, INC. AND ZAPPOS.COM, INC. ..................................................i

CERTIFICATE OF INTEREST
AMERICAN AIRLINES, INC. .............................................................. iii

CERTIFICATE OF INTEREST
BARNES & NOBLE, INC. ...................................................................iv

CERTIFICATE OF INTEREST
EXPEDIA, INC..................................................................................v

TABLE OF AUTHORITIES ...................................................................xi

STATEMENT OF RELATED CASES ............................................... xvii

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF THE ISSUES..............................................................1

STATEMENT OF THE CASE..................................................................2

    I.     THE SETTLEMENT AGREEMENT WITH EBAY ..........................3

          A.     The Transfer Language in the Purchase and Sale
                 Paragraph ...................................................................4

          B.     The Transfer Language in Schedule B .......................5

          C.     The Transfer Language of the Executed Assignments..............6

          D.     Walker's Testimony Concerning the Transfer Language...........7

    II.    DEFENDANTS' MOTIONS TO DISMISS WALKER'S
          CLAIMS FOR LACK OF STANDING .............................................8

III.    EVENTS AFTER THE JUNE 19 ORDER OF DISMISSAL ............15

SUMMARY OF THE ARGUMENT ....................................................17

ARGUMENT ...................................................................................19

I.    WALKER FAILED TO PROVE IT HAS STANDING IN THE
      140-142 CASES, IN WHICH ONLY THE '359 PATENT IS
      ASSERTED............................................................................19

      A.    Delaware Law Governs the Enforcement of the
            Agreement.................................................................19

      B.    The Settlement Agreement Unambiguously Assigned all
            Present and Future Patents and Applications Claiming
            Priority From or Related to any Application on
            Schedule A ...............................................................22

            1.    The Broad Granting Language of the "Purchase
                  and Sale" Paragraph Clearly and Unambiguously
                  Assigned Child Patents and Applications,
                  Including the '359 Patent...................................22

            2.    The Remainder of the Agreement Confirms the
                  District Court's Interpretation of the Broad
                  Granting Language to Include Child Patents.................24

                  a.    The "Delivery" Paragraph and Schedule B..........26

                  b.    The Scheme of Schedule A .................................27

                  c.    The Parallel Definition of Licensed "Patent
                        Rights"................................................................29

                  d.    The Assignment of Causes of Action..................30

                  e.    The                           Paragraph ......................31

   f. The "Seller Warranties" do Not Introduce any Ambiguity Regarding the '359 Patent ..........31

   g. No Reservation of Rights ......................32

  C. The Parol Evidence, if Considered, Supports an Intent to Transfer Patent Families .............................................32

   1. Parol Evidence is Inadmissible Where the Four Corners of an Agreement Unambiguously Express the Parties' Intent ...............................................32

   2. Even if Considered, the Parol Evidence Indicates Walker Does Not Own the '359 Patent .........................35

II. WALKER FAILED TO PROVE IT HAS STANDING IN THE 313 CASE, IN WHICH THE '056 AND '470 PATENTS ARE ASSERTED .........................................................................................36

  A. The Settlement Agreement Unambiguously Assigned the '056 and '470 Patents..................................................36

   1. The Broad Transfer Language of the "Purchase and Sale" Paragraph and the Agreement as a Whole Show Intent to Transfer Patents Related to Those on Schedule A .......................................36

   2. The Seller Warranty Provision Does Not Introduce any Ambiguity Regarding the Definition of Transferred Patents .........................................37

  B. The Record Supports the District Court's Finding That the Parol Evidence is "Equivocal" and Insufficient to Establish Standing.................................................39

   1. Standard of Review .......................................40

   2. Delaware Law and the Settlement Agreement's Merger Clause Properly Preclude Consideration of Parol Evidence .................................................40

3.    The Parol Evidence Undermines Walker's Position That Only the Applications Listed on Schedule A Were Transferred ........................................................41

    a.    Ms. Li's Letter Does Not Support Walker's Position ................................................42

    b.    The Tikku Declaration Does Not Support Walker's Position ..................................42

    c.    The Tikku Deposition Refutes Walker's Position ................................................45

    d.    Walker's Belated Delivery of Executed Assignments Does Not Show an Intent to Transfer Only the Applications on Schedule A ...........................................47

    e.    Walker's Emails are Equivocal ...........................48

C.    The Alleged Agreement as to the '056 and '470 Patents Cannot be Squared With any Objective, Reasonable Construction of the Settlement Agreement ...............................49

III.    THE EXECUTED ASSIGNMENTS INDEPENDENTLY TRANSFER ANY REMAINING RIGHTS TO THE PATENTS-IN-SUIT ...........................................................50

IV.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DISMISSING WALKER'S CLAIMS WITH PREJUDICE ........................................................52

A.    Standard of Review ..................................................52

B.    The District Court Retained Jurisdiction to Dismiss Walker's Claims With Prejudice .............................53

    1.    The July 19 Notices Were Premature Because of Defendants' Pending Counterclaims ...............53

2.    The July 19 Notices Were Ineffective Because of the Pending Rule 59(e) Motions ....................................55

C.    Walker had "Multiple Opportunities" to Cure the Standing Defect and Failed to do so .........................................57

D.    Walker Waived any Right to Respond to Defendants' Motions for Clarification ..........................................................61

V.    CONCLUSION ...................................................................63

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

## CONFIDENTIAL MATERIALS STATEMENT

Pursuant to Federal Circuit Rule 28(d)(1)(B), confidential material has been redacted from this brief. Confidential information relating to a confidential agreement that is subject to protective orders in the District Court has been deleted from pages vii, 5-14, 24-26, 28-29, 31, 33-35, 43-48, 50.

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adventus Ams., Inc. v. Calgon Carbon Corp*.,
    No. 3:08-CV-497-RJC-DCK,
    2009 WL 2998094 (W.D.N.C. Sept. 15, 2009) ........................................... 59-60

*AT&T Corp. v. Lillis*,
    970 A.2d 166 (Del. 2009) ..................................................................................40

*Axis Reinsurance Co. v. HLTH Corp.*,
    993 A.2d 1057 (Del. 2010) ...............................................................................38

*Basalem Township v. Int'l Surplus Lines Ins. Co.*,
    38 F.3d 1303 (3d Cir. 1994) .............................................................................54

*Bd. of Tr. of Bay Med. Ctr. v. Humana Military Healthcare Servs., Inc.*,
    123 Fed. App'x 995 (Fed. Cir. 2005) ...............................................................56

*Bd. of Trustees of Leland Stanford Junior Univ. v.*
*Roche Molecular Sys., Inc.*,
    583 F.3d 832 (Fed. Cir. 2009) .........................................................................23

*Council of Dorset Condo. Apartments v. Dorset Apartments*,
    No. 90C-10-269, 1992 WL 240365 (Del. Super. Ct. Sept. 24, 1992).......... 38-39

*Demetree v. Commonwealth Trust Co.*,
    No. 14354, 1996 WL 494910 (Del. Ch. Aug. 27, 1996) ...................................21

*In re Digital Music Antitrust Litig.*,
    812 F. Supp. 2d 390 (S.D.N.Y. 2011) ..............................................................59

*Dow Chem. Co. v. Nova Chems. Corp.*,
    458 Fed. App'x 910 (Fed. Cir. 2012) ...............................................................38

*Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*,
    702 A.2d 1228 (Del. 1997) ...............................................................20, 32, 41

*E.I. du Pont de Nemours & Co. v. Shell Oil Co.*,
  498 A.2d 1108 (Del. 1985) ...................................................................20, 25, 29

*Elliott Assocs. v. Avatex Corp.*,
  715 A.2d 843 (Del. 1998) ...................................................................................38

*In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*,
  628 F.3d 157 (5th Cir. 2010) .............................................................................60

*Gerber Scientific Int'l, Inc. v. Satisloh AG*,
  No. 3:07-CV-1382, 2009 WL 2869705 (D. Conn. Sept. 2, 2009) ............... 26-27

*Great-West Investors LP v. Thomas H Lee Partners, L.P.*,
  No. 5508-VCN, 2011 WL 284992 (Del. Ch. Oct. 18, 2011) ...........................22

*GRT, Inc. v. Marathon GTF Tech., Ltd.*,
  No. 5571-CS, 2012 WL 2356489 (Del. Ch. June 21, 2012) .............................38

*Hanover Potato Prods., Inc. v. Shalala*,
  989 F.2d 123 (3d Cir. 1993) .............................................................................52

*Hendrie v. Sayles*,
  98 U.S. 546 (1878).................................................................................23, 25, 51

*Hill v. Williamsport Police Dept.*,
  69 Fed. App'x 49 (3d Cir. 2003) .......................................................................62

*Honeywell Int'l Inc. v. Air Prods. & Chems., Inc.*,
  872 A.2d 944 (Del. 2005) ..................................................................................40

*Hyansky v. Vietri*,
  No. 14645-NC, 2003 WL 21976031 (Del. Ch. Mar. 28, 2003) ........................33

*Jim Arnold Corp. v. Hydrotech Sys., Inc.*,
  109 F.3d 1567 (Fed. Cir. 1997) .................................................................... 19-20

*Joint Mktg. Int'l, Inc. v. L&N Sales & Mktg., Inc.*,
  No. 05-CV-4818-DLI-VVP,
  2006 WL 1995130 (E.D.N.Y. July 14, 2006).....................................................60

*Kraft, Inc. v. United States*,
  85 F.3d 602 (Fed. Cir. 1996) ............................................................55

*Kuhn Constr., Inc. v. Diamond State Port Corp.*,
  990 A.2d 393 (Del. 2010) ..............................................................29

*Majkowski v. Am. Imaging Mgmt. Servs., LLC*,
  913 A.2d 572 (Del. Ch. 2006) .........................................................20

*Maxus Energy Corp. v. United States*,
  31 F.3d 1135 (Fed. Cir. 1994) ........................................................55

*Medtronic Sofamor Danek USA, Inc. v. Globus Med., Inc.*,
  637 F. Supp. 2d 290 (E.D. Pa. 2009)................................................59

*MHL TEK, LLC v. Nissan Motor Co.*,
  655 F.3d 1266 (Fed. Cir. 2011) .......................................................30

*Minco, Inc. v. Combustion Eng'g, Inc.*,
  95 F.3d 1109 (Fed. Cir. 1996) ........................................................25

*Nystrom v. TREX Co., Inc.*,
  339 F.3d 1347 (Fed. Cir. 2003) .......................................................54

*Oglesby v. Conover*,
  No. K10C-08-017-RBY,
  2011 WL 3568276 (Del. Super. Ct. May 16, 2011) ..........................33

*Osborn ex rel. Osborn v. Kemp*,
  991 A.2d 1153 (Del. 2010) ...............................................20, 21, 25

*Park-In Theatres, Inc. v. Paramount-Richards Theatres, Inc.*,
  90 F. Supp. 730 (D. Del. 1950), *aff'd*,
  185 F.2d 407 (3d Cir. 1950) ...........................................................27

*Pause Tech. LLC v. TiVo Inc.*,
  401 F.3d 1290 (Fed. Cir. 2005) ..................................................53, 54

*Peden v. Gray*,
  886 A.2d 1278 (Del. 2005) .................................................20, 32, 40

*Penn Mut. Life Ins. Co. v. Oglesby*,
   695 A.2d 1146 (Del. 1997) ............................................................29

*Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co.*,
   No. 19209, 2002 WL 1558382 (Del. Ch. July 9, 2002) .....................21

*Regents of Univ. of N.M. v. Knight*,
   321 F.3d 1111 (Fed. Cir. 2003) ..................................................26, 51

*Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*,
   616 A.2d 1192 (Del. 1992) ........................................................21, 33

*In re Ricoh Co. Patent Litig.*,
   661 F.3d 1361 (Fed. Cir. 2011) .....................................................62

*Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*,
   55 A.3d 330 (Del. 2012) ...........................................................20, 38

*RTN Investors, LLC v. RETN, LLC*,
   No. 08C-04-007-JRJ,
   2011 WL 862268 (Del. Super. Ct. Feb. 10, 2011) ............................33

*Sack v. Low*,
   478 F.2d 360 (2d Cir. 1973) ...........................................................55

*SafeTCare Mfg., Inc. v. Tele-Made, Inc.*,
   497 F.3d 1262 (Fed. Cir. 2007) .......................................................54

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
   427 F.3d 971 (Fed. Cir. 2005) ......................................52, 57, 58, 59

*In re SimmsParris*,
   448 Fed. App'x 268 (3d Cir. 2011) .................................................62

*Smith v. Bayer Corp.*,
   131 S. Ct. 2368 (2011)...................................................................61

*Smith v. Sabol*,
   No. 1:CV-11-1697, 2013 WL 2371193 (M.D. Pa. May 30, 2013) ...................60

*Speedplay, Inc. v. Bebop, Inc.*,
   211 F.3d 1245 (Fed. Cir. 2000) ........................................................23

*StoneEagle Servs., Inc. v. Gillman*,
   No. 2013-1248, 2014 WL 1228735 (Fed. Cir. Mar. 26, 2014) .........19

*Telepresence Techs., LLC v. Upper Deck Co.*,
   No. SA-CV-00-183-AHS,
   2001 WL 36239744 (C.D. Cal. Mar. 29, 2001)..................................59

*Textile Prods., Inc. v. Mead Corp.*,
   134 F.3d 1481 (Fed. Cir. 1998) ................................................. 58-59

*United Rentals, Inc. v. RAM Holdings, Inc.*,
   937 A.2d 810 (Del. Ch. 2007) .........................................................45

*United States v. Gray*,
   876 F.2d 1411 (9th Cir. 1989) ........................................................62

*US West, Inc. v. Time Warner Inc.*,
   No. 14555, 1996 WL 307445 (Del. Ch. June 6, 1996)................ 45-46

*In re VistaCare Grp., LLC*,
   678 F.3d 218 (3d Cir. 2012) ...........................................................52

**Statute**

28 U.S.C. § 1295(a)(1).........................................................................53

**Regulation**

37 C.F.R. § 1.53(b) ..............................................................................26

**Rules**

Del. L. R. 7.1.2(b) ...............................................................................61

Fed. R. App. P. 4(a)(2)..........................................................................53

Fed. R. App. P. 4(a)(4)(A)(iv) ..............................................................55

Fed. R. App. P. 4(a)(4)(B)(i).................................................................53, 55, 56

Fed. R. Civ. P. 12(b)(1).................................................................................2

Fed. R. Civ. P. 41(a).................................................................................60

Fed. R. Civ. P. 41(a)(2).............................................................................60

Fed. R. Civ. P. 54(b).................................................................................54

Fed. R. Civ. P. 58(d).................................................................15, 16, 18

Fed. R. Civ. P. 59(e)............................................................................*passim*

## Other Authorities

16A C. Wright, A. Miller & E. Cooper,
*Federal Practice and Procedure* § 3950.4 (4th ed.)................................56

16A C. Wright, A. Miller & E. Cooper,
*Federal Practice and Procedure* § 3950.5 (4th ed.)................................56

18 C. Wright, A. Miller & E. Cooper,
*Federal Practice and Procedure* § 4405 (2d ed.)....................................61

Black's Law Dictionary 1586 (6th ed. 1990) .........................................39

Intell. Prop. L. Bus. Law § 13:2 (2012 ed.) ..........................................25

**STATEMENT OF RELATED CASES**

This Court's decision will directly affect Walker Digital's standing in two other cases currently pending in the United States District Court for the District of Delaware: *Walker Digital, LLC v. American Airlines, Inc.*, No. 1:11-cv-00320-GMS and *Walker Digital, LLC v. Amazon.com, Inc.*, No. 1:11-cv-00362-GMS.

## JURISDICTIONAL STATEMENT

Although this Court now has jurisdiction over these appeals, it lacked jurisdiction at the time Walker Digital, LLC ("Walker") filed its first notices of appeal, as stated in Defendants' Motion to Dismiss Plaintiff-Appellant's Premature Appeal. (Appeal No. 13-1520, Doc. 32.) The District Court granted Defendants' request for dismissal with prejudice and addressed the counterclaims while the case was still properly before it. Thereafter, this Court denied Defendants' motion to dismiss. (Appeal No. 13-1520, Doc. 45.)

## STATEMENT OF THE ISSUES

1.     Did the District Court correctly hold that Walker transferred all its rights in the patents-in-suit to eBay, Inc. ("eBay") where:

a)     Walker's Settlement Agreement with eBay defines transferred patents to include "all counterparts, continuations, continuations-in-part, divisionals, reissues, reexaminations, and extensions [of applications listed on Schedule A], and all current, future, or abandoned patents and patent applications … claiming priority from, derived from, or related to any of the foregoing," and it is undisputed that each of the patents-in-suit is a continuation-in-part of, claims priority from, is derived from, and is related to one or more applications listed on Schedule A;

1

b)     the District Court's finding that the parol evidence is equivocal is supported by the record, and that evidence does not support Walker's position that only patents listed on Schedule A were transferred; and

c)     Walker executed "short form" patent assignments which assigned all patents for any improvements disclosed in applications to which the patents-in-suit claim priority?

2.     Was it within the District Court's jurisdiction and discretion to dismiss Walker's cases "with prejudice" where:

a)     Walker's first Notices of Appeal were filed before any order disposing of Defendants' counterclaims or Defendants' earlier filed Rule 59(e) motions; and

b)     Walker repeatedly failed to establish standing or cure its lack of standing despite being afforded multiple opportunities over the course of several months?

## STATEMENT OF THE CASE

On June 19, 2013, the District Court granted Defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of standing after determining that a settlement agreement between Walker and eBay ("the Settlement Agreement" or "the Agreement") clearly and unambiguously assigned all three patents-in-suit to eBay, and that in any event, the parol evidence submitted by Walker was equivocal and insufficient to satisfy Walker's burden of

2

establishing standing in these actions. (A0001-17.) Subsequently, after determining that Walker "was offered multiple opportunities to cure the standing defect" but had failed to do so, or even to offer evidence that it had a plan to do so, the District Court granted Defendants' requests for dismissal with prejudice. (A0026.)

## I.    THE SETTLEMENT AGREEMENT WITH EBAY

On April 11, 2011, Walker filed C.A. No. 11-313 (the "313 Case") against Amazon.com, Inc. ("Amazon"), Zappos.com, Inc., American Airlines, Inc., Expedia, Inc. ("Expedia"), eBay, and others asserting U.S. Patent Nos. 7,827,056 (the "'056 patent") and 7,831,470 (the "'470 patent"). (A0221.) Both the '056 patent and the '470 patent claim priority to, *inter alia*, three U.S. Patent Applications: No. 08/994,426 (issued as U.S. Patent No. 6,694,300) (the "'426 application"); No. 08/982,149 (issued as U.S. Patent No. 6,196,458) (the "'149 application"); and No. 09/100,684 (issued as U.S. Patent No. 6,898,570) (the "'684 application"). (A0120; A0155.)

Ten months later, on February 7, 2012, U.S. Patent No. 8,112,359 (the "'359 patent") issued on Application No. 12/974,742 (collectively the '056, '470, and '359 patents are referred to as the "patents-in-suit"). (A0192.) On the same day, Walker filed C.A. Nos. 12-140, 12-141, and 12-142 (collectively "the 140-142 Cases") against Amazon, Barnes & Noble, Inc., and Expedia, respectively, alleging

infringement of the '359 patent. (A0615; A0619; A0652; A0655; A0688; A0691.) The '359 patent claims priority to, *inter alia*, one of the same applications, the '426 application, to which the patents asserted in the 313 Case claim priority. (A0192.)

On December 9, 2011—while the 313 Case was pending but before the '359 patent issued and the 140-142 Cases had been filed—Walker executed the Settlement Agreement with eBay, in which it licensed to eBay over 500 U.S. and foreign patents and applications, and assigned to eBay a set of patents and applications—the extent of the assignment is at issue here. (A0867-925; A1787-1845.)

### A. The Transfer Language in the Purchase and Sale Paragraph

The relevant transfer language is found in the "Purchase and Sale" paragraph of Exhibit A, "Patent Purchase Terms," to the Settlement Agreement:

> **1.1 Purchase and Sale.** Walker Digital LLC ("**Seller**" for purposes of this Exhibit A) hereby conveys, assigns, and transfers to eBay Inc. ("**Purchaser**" for purposes of this Exhibit A), and Purchaser hereby accepts, all right, title, and interest in and to the patents and patent applications described on **Schedule A** (collectively, the "**Transferred Patents**"). The Transferred Patents include all counterparts, continuations, continuations-in-part, divisionals, reissues, reexaminations, and extensions thereof, and all current, future, or abandoned patents and patent applications (whether filed by Seller or Purchaser and whether filed before, on, or after the Effective Date) claiming priority from, derived from, or related to any of the foregoing in any jurisdiction. The sale of the Transferred Patents to Purchaser includes the transfer of

4

CONFIDENTIAL MATERIAL REDACTED

> (i) the right to sue and recover damages for past, present, and/or future infringement; (ii) the right to injunctive relief and; (iii) any and all causes of action relating to any of the inventions or discoveries described in the Transferred Patents. Seller reserves no rights whatsoever in the Transferred Patents.

(A0920-25; A1840-45.)

Schedule A lists 11 abandoned applications, 5 pending applications, and 10 applications that had issued as patents at the time of the transfer. (A0923; A1843.) The listed applications include the '426 application, to which all patents-in-suit claim priority, and the '149 and '684 applications, to which both the '056 and '470 patents claim priority. (*Id*.)

### B.    The Transfer Language in Schedule B

The Settlement Agreement also required Walker to

(A0920; A1840.)    The form at Schedule B assigns:

> the entire right, title and interest, in and to:
>
> (1) any and all improvements disclosed in [the applications to be listed therein];
>
> (2) all … patents that have been or shall be issued … on any of said improvements; and … all … continuing … [and] extension … applications, and all other patent

5

applications that have been filed or shall be filed … on any of said improvements; [and]

(3) … any and all causes of action … relating to any inventions or discoveries described therein ….

(A0924; A1844.)

## C.    The Transfer Language of the Executed Assignments

Although the Settlement Agreement was signed by both Walker (Jonathan Ellenthal) and eBay (Michael Jacobson) on December 9, 2011, (A0882-83; A1802-03), Mr. Ellenthal did not execute individual short form patent assignments until January 3, 2012, (A0966-68; A1853).    Moreover, the executed assignments differed from Schedule B.    Notably, the form was modified to remove the words "continuing" and "extensions."    (*Compare id. with* A0924; A1844.)    When asked during deposition about this modification, Mr. Ellenthal admitted

(A3239-51.)    Mr. Ellenthal testified that

, asserting attorney-client privilege (among other grounds).    (A3246-51.)    Anup Tikku, a representative of eBay during the negotiations,  testified                                                                     .
(A2665, at 152:8-153:7; A2600, at 152:8-153:7.)

Nevertheless, the executed short form assignments still assign to eBay, *inter alia*, "the entire right, title and interest, in and to:"  "any and all improvements

6

disclosed in" the '426, '149 and '684 applications (among others), and "all …

patents that have been or shall be issued … on any of said improvements," "all …

patent applications that have been filed or shall be filed … on any of said

improvements," and "all causes of action … relating to any inventions or

discoveries described therein." (A0966-68; A1853.) These assignments were

recorded with the Patent Office on September 28, 2012. (*E.g.*, A1855.)

### D.    Walker's Testimony Concerning the Transfer Language

Walker's only witness on the topic of ownership of the patents-in-suit,

including the Settlement Agreement with eBay, was its CEO, Mr. Ellenthal.

Through Mr. Ellenthal Walker admitted that, in addition to the patents on Schedule

A, the second sentence of the Purchase and Sale paragraph of Exhibit A

However, Walker's

representative declined to say what precisely "transferred patents" included:

7

CONFIDENTIAL MATERIAL REDACTED

(A3264-65; *see also* A3256-57; A3218; A3221; A3233; A3254-55.)  Mr. Ellenthal

(A3209-10;

A3244-45; A3264-65.)    Walker offered no other witnesses to explain its

understanding or intent regarding the Settlement Agreement.

## II.    DEFENDANTS' MOTIONS TO DISMISS WALKER'S CLAIMS FOR LACK OF STANDING

On November 30, 2012, Defendants moved to dismiss the 313 Case for lack

of standing.  (A0840-42.)[1]  On December 21, 2012, Walker produced with their

answering brief email correspondence and redlines exchanged during the

---

[1] This was promptly after the deposition of Mr. Ellenthal in the 313 Case. Defendants filed their motion to dismiss the 140-142 Cases, (A1754-57), promptly following the deposition of Mr. Ellenthal on January 16, 2013 in the 140-142 Cases.

settlement negotiations between David Pridham (Walker's agent during the negotiations), Charles Schwab and Mr. Tikku (negotiating on behalf of eBay), and others. One redline Walker claims was exchanged on December 9, 2011, (A1060 ¶ 4-5; A1063), shows that, as the parties were finalizing the Settlement Agreement, eBay edited the Purchase and Sale paragraph to state that "Transferred Patents" included "all counterparts, continuations, continuations-in-part … (whether filed by Seller or Purchaser *and whether filed before, on, or after the Effective Date*)." (A1118 (emphasis indicating eBay addition); *see also* A2116 ¶ 5; A2365.) On that same day, Mr. Pridham requested

(A2685; A2307.)

Walker also included with its answering brief a letter from Helen Li, an eBay employee, to Mr. Pridham purporting to disclaim eBay's ownership of the patents-in-suit in the 313 Case.[2] (A1218; *see also* A2434.) Ms. Li's letter, however, was not under oath and included no indication she was authorized to speak on behalf of eBay. The District Court ultimately found this letter ambiguous and unhelpful to Walker's argument. (A0014 n.9.)

At a status conference on February 7, 2013, the District Court acknowledged the standing issue and risk of prejudice to Defendants. (A3444-45.) The Court

---

[2] Although Walker relies in its Opening Brief on Ms. Li's letter, this letter does not mention the '359 patent and was not considered by the District Court in its decision to dismiss the 140-142 Cases. (*See* A0013 n.8.)

9

notified Walker that Ms. Li's letter was not sufficient to prove standing and that, for the case to proceed, Walker must submit at minimum an affidavit or other legal document resolving the ownership of the patents-in-suit. (A3440-41 ("[T]he Court requires more than a letter. I mean, the Court requires some affidavit, something that truly represents a legal affirmation of a party's position …."); A3445 ("I don't think a letter from, you know, one person at eBay is a sufficient legal document for a defendant to come back to and say, listen, you know, eBay—if, in the future, if there's any question, eBay, you averred that you were not, are not the owner of this and cannot pursue your property rights against us on this patent."); *see also* A3458.) The District Court stayed the cases to allow Walker time to obtain such evidence from eBay. (A3458; A3464-67.)

On March 4, 2013, Walker submitted a two-page declaration from Mr. Tikku (the "Tikku Declaration"). (A2066.) Mr. Tikku made no statements regarding the '359 patent. (*See* A2067-68; A2436-37.) Nor did Mr. Tikku make any statements regarding the ownership of any patent or application. The Tikku Declaration attested merely to

(A2067 ¶ 4; A2436 ¶ 4.) It did not "assign back" to Walker any patent-in-suit. It did not set forth eBay's understanding of the patents transferred, nor address the transfer language in the Settlement Agreement or short form assignments. (*See* A2067-68; A2436-37.)

10

CONFIDENTIAL MATERIAL REDACTED

On March 8, 2013, the District Court ordered that Defendants may depose Mr. Tikku and, if he was not made available, the District Court would not consider his declaration. (A2440; *see also* A3501 ("[T]he deposition should go forward so long as Walker Digital does not want to simply rely on the four corners of the agreement and wants to rely on, for instance, the [Tikku Declaration].").) Defendants argued at a hearing on March 13, 2013 that the 140-142 Cases were ripe for disposition—without waiting for the upcoming Tikku deposition—because the Tikku Declaration was silent as to the '359 patent. (A3505-06.) Walker responded that Mr. Tikku's deposition "should be informative of some of the issues." (A3506.)

Mr. Tikku was deposed on April 18, 2014. His testimony confirmed

(A2644, at 68:13-25 (objections omitted); A2579, at 68:13-25.)

11

CONFIDENTIAL MATERIAL REDACTED

His   testimony   also   confirmed   that

(A2644, at 66:10-67:11 (objections omitted); A2579, at 66:10-67:11.)

When asked about his declaration, Mr. Tikku testified

CONFIDENTIAL MATERIAL REDACTED

(A2657-58, at 121:11-123:22 (objections omitted); A2592-93, at 121:11-123:22;

*see also* A2658-59, at 124-26; A2593-94, at 124-26.)

Mr. Tikku also testified that Mr. Pridham told him

CONFIDENTIAL MATERIAL REDACTED

(A2647, at 79:20-80:3; A2677, at 199:22-200:4; 201:1-10; A2582, at 79:20-80:3;

A2612, at 199:22-200:4; 201:1-10.)   However, Mr. Tikku testified—and Walker

subsequently agreed in briefing—that the Settlement Agreement

(A2648, at 82:8-11;

14

A2655, at 112:10-11; A2583, at 82:8-11; A2590, at 112:10-11; *see also* A1050 ("Neither party requested a change in the grant language of the Patent Purchase Terms or the definition of Transferred Patents to reflect this change.").)

The District Court held a final hearing on the standing issue on June 6, 2013,where Walker expressly disavowed any oral agreement during negotiations to carve out patents in litigation. (A2740-41 ("Walker Digital is not arguing, one, that there ever was an oral modification.").) On June 17, 2013, Walker moved to voluntarily dismiss the 140-142 Cases without prejudice. (A2918.)

On June 19, 2013, the District Court entered its Opinion and Order dismissing Walker's claims for lack of standing. *Walker Digital, LLC v. Expedia, Inc.*, 950 F. Supp. 2d 729 (D. Del. 2013). The District Court found the Settlement Agreement clear and unambiguous, but also was not persuaded by Walker's parol evidence. (A0001-17.) The District Court also denied Walker's motion for voluntary dismissal without prejudice as moot. (A0013 n.7.)

## III. EVENTS AFTER THE JUNE 19 ORDER OF DISMISSAL

On July 12, 2013, Defendants moved, in the alternative, for: (1) entry of final judgment dismissing Walker's claims "with prejudice" and Defendants' counterclaims "without prejudice" pursuant to Federal Rule of Civil Procedure 58(d); or, (2) if the District Court's June 19 orders were intended to be final judgments, amendment of the judgments pursuant to Rule 59(e) to dismiss

Walker's claims "with prejudice." (A2933-40.) While that motion was pending, Walker filed its first notices of appeal on July 19, 2013.

On September 13, 2013, Defendants moved this Court to dismiss or stay Walker's premature appeal because Defendants' counterclaims were not addressed in the June 19 orders, and in view of Defendants' pending July 12 motions. (Appeal No. 13-1520, Doc. 32.)

On October 16, 2013, the District Court signed a Memorandum Order in all four cases ostensibly addressing Defendants' July 12 motions, but denying those motions "without prejudice to renew." (A0018-22.) The orders did not address Defendants' counterclaims or requests for entry of final judgment, nor mention Defendants' requests to dismiss Walker's claims with prejudice. (A0020-22.) Instead, the orders expressly addressed postponing judgment on Defendants' motions for attorneys' fees. (*Id.*)

On October 22, 2013 and October 23, 2013, motions for clarification of the October 16 orders were filed because of uncertainty surrounding the status of Defendants' counterclaims and their motions under Rule 58(d) and Rule 59(e).[3] (A3593-96; A3597-600.) Clarification was also requested so that the parties and this Court could determine whether appeals were proper at that time. (A3594;

---

[3] That a motion for clarification was filed in only three of the cases on appeal is of no significance. The District Court's October 16 and October 25 orders had a caption for all four cases and were entered in all fours cases simultaneously.

A3598.)  Walker indicated that it did not plan to file a response and that it did not oppose the motions.  (*Id.*)

On October 25, 2013, the District Court ruled on the motions for clarification, dismissing all the actions with prejudice and declaring Defendants' counterclaims moot.  (A0023-26.)  Walker filed its second notices of appeal on November 11, 2013.

## SUMMARY OF THE ARGUMENT

The District Court properly found that Walker lacked standing because the Settlement Agreement transferred ownership of the patents-in-suit to eBay.  The plain language of the Purchase and Sale paragraph expressly transfers both the applications listed on Schedule A and related patents and applications, and the patents-in-suit are undisputedly related.  Walker's position is legally flawed because it would require the Court to ignore the second sentence of that paragraph.  The transfer language is clear and consistent with other provisions of the Settlement Agreement, including the Delivery paragraph and short form assignments in Schedule B.  There is no conflict between the Purchase and Sale paragraph and the Seller Warranties paragraph, as Walker contends, but even if there were, any conflict relates only to two of the three patents-in-suit, and the Purchase and Sale paragraph trumps because it directly relates to the purpose of the agreement.

17

The clear language of the Settlement Agreement and its merger clause preclude reliance on parol evidence. To the extent such evidence is considered, however, it does not actually support Walker's proposed construction of the Settlement Agreement. The evidence from eBay employees does not mention the '359 patent—the only patent asserted in the 140-142 Cases—nor does it directly address the language of the Settlement Agreement. To the extent that evidence suggests an oral carve-out for the '056 and '470 patents, such a carve-out is barred by the merger clause and has been rejected by Walker. Emails relied on by Walker are, at best, equivocal and support Defendants' position at least as much as Walker's.

The short form assignments executed and delivered by Walker also contain broad granting language. Even though Walker unilaterally changed the agreed-upon language (an unexplained post-hoc change that further underscores the meaning and effect of what the parties actually previously transferred and agreed to transfer in the Settlement Agreement), the assignments as executed are still broad enough that they are independently sufficient to transfer the patents-in-suit.

Walker's July 2013 Notices of Appeal were premature and could not divest the District Court of jurisdiction until it resolved Defendants' pending motions under Federal Rules of Civil Procedure 58(d) and 59(e) and disposed of

Defendants' counterclaims.    Thus the District Court had jurisdiction when it properly exercised its discretion to dismiss Walker's claims with prejudice.

## ARGUMENT

I.    **WALKER FAILED TO PROVE IT HAS STANDING IN THE 140-142 CASES, IN WHICH ONLY THE '359 PATENT IS ASSERTED.**

The District Court correctly dismissed the 140-142 Cases because Walker failed to satisfy its burden of proving that it owns the '359 patent.    It is undisputed that Walker executed the Settlement Agreement with eBay on December 9, 2011, two months before the '359 patent issued on February 7, 2012.    Moreover, the unambiguous transfer language in the Purchase and Sale paragraph and Schedule B shows that Walker assigned to eBay all rights it had in the application that issued as the '359 patent before filing the 140-142 Cases.    Therefore, the District Court correctly "conclud[ed] that, under the broad granting language of Exhibit A, the Settlement Agreement clearly transferred ownership rights of the '359 patent to eBay." (A0013.)

### A.    Delaware Law Governs the Enforcement of the Agreement.

State law governs the interpretation of the scope of a patent assignment. *StoneEagle Servs., Inc. v. Gillman*, No. 2013-1248, 2014 WL 1228735, at *3 (Fed. Cir. Mar. 26, 2014) ("[T]he question of who owns the patent rights and on what terms typically is a question exclusively for state courts." (quoting *Jim Arnold*

*Corp. v. Hydrotech Sys., Inc.*, 109 F.3d 1567, 1572 (Fed. Cir. 1997))). The parties agree that Delaware law applies here. (*See* WD Br.[4] 22.)

Under Delaware law, the Settlement Agreement must be considered in its entirety, giving effect to each provision. *See Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010) ("'We will read a contract as a whole and we will give each provision and term effect, so as not to render any part of the contract mere surplusage.'" (citation omitted)); *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985). An objective reading of the four corners of the Settlement Agreement determines the parties' intentions for purposes of contract interpretation, and resort to parol evidence is improper unless that agreement is ambiguous on its face. The Court is to "'give priority to the parties' intentions as reflected in the four corners of the agreement.'" *Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*, 55 A.3d 330, 334 (Del. 2012) (citation omitted); *Peden v. Gray*, 886 A.2d 1278, at *2 (Del. 2005) (unpublished table opinion); *see also Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997) ("If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity."); *Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 581 (Del. Ch. 2006) ("When the language of a contract is plain and unambiguous,

---

[4] Walker's Opening Brief is referred to herein as "WD Br."

binding effect should be given to its evident meaning."); *Demetree v. Commonwealth Trust Co.*, No. 14354, 1996 WL 494910, at *4 (Del. Ch. Aug. 27, 1996) ("An inquiry into the subjective unexpressed intent or understanding of the individual parties is neither necessary nor appropriate where the words of the contract are sufficiently clear to prevent reasonable persons from disagreeing as to their meaning.").

The requirement of interpreting unambiguous documents as written stems from "'Delaware['s] adher[ence] to the "objective" theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party.'" *Osborn*, 991 A.2d at 1159 (citation omitted). "The true test is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant." *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992); *see also Progressive Int'l Corp. v. E.I. Du Pont de Nemours & Co.*, No. 19209, 2002 WL 1558382, at *7 (Del. Ch. July 9, 2002) ("Delaware courts have held that sophisticated parties may not reasonably rely upon representations that are inconsistent with a negotiated contract, when that contract contains a provision explicitly disclaiming reliance upon such outside representations."). "The Court's role is not 'to rewrite [a] contract between sophisticated market participants, allocating the risk of an agreement after the fact, to suit the court's

21

sense of equity or fairness.' Instead, '[i]t is to give meaning and substance to the words the parties have freely chosen.'" *Great-West Investors LP v. Thomas H Lee Partners, L.P.*, No. 5508-VCN, 2011 WL 284992, at *8 (Del. Ch. Oct. 18, 2011) (citations and internal footnote omitted).

**B.      The Settlement Agreement Unambiguously Assigned all Present and Future Patents and Applications Claiming Priority From or Related to any Application on Schedule A.**

The Settlement Agreement describes what is being transferred twice—first in the actual transfer language of the Purchase and Sale paragraph and second in the form assignment of Schedule B.   Although each of the descriptions use different words, they both unambiguously transfer entire families—not individual applications.   This is consistent with the overall structure and purpose of the Agreement.

**1.      The Broad Granting Language of the "Purchase and Sale" Paragraph Clearly and Unambiguously Assigned Child Patents and Applications, Including the '359 Patent.**

The "Purchase and Sale" paragraph of the Settlement Agreement Patent Purchase Terms clearly defines the "Transferred Patents" to include "all" current and future patents and applications related to those on Schedule A:

> The ***Transferred Patents include*** all counterparts, continuations, ***continuations-in-part***, divisionals, reissues, reexaminations, and extensions ***thereof, and all***

22

> *current, future*, or abandoned ***patents and patent
> applications*** (whether filed by Seller or Purchaser and
> whether filed before, on, or after the Effective Date)
> ***claiming priority from, derived from, or related to any
> of the foregoing*** in any jurisdiction.

(A0920 (emphases added); A1840.)  Walker does not dispute that the '359 patent

is a continuation-in-part of, claims priority from, is derived from, and is related to

the '426 application that appears on Schedule A.  Accordingly, Walker transferred

to eBay all rights it had in the future '359 patent and its pending application.  *See

Hendrie v. Sayles*, 98 U.S. 546, 549 (1878) (noting that "an assignment may be

made before the patent is obtained").[5]

    The plain language of the Purchase and Sale paragraph admits no other

meaning.   When Walker, in the fourth sentence of the Purchase and Sale

paragraph, states that it "reserves no rights whatsoever in the Transferred Patents,"

it disclaims ownership of all patents and applications described in ***both*** the first and

second sentences, including "continuations-in-part" such as the then-pending

application that issued as the '359 patent.  (A0920; A1840.)

---

[5] An assignment need not list the application by specific number to be valid.
*See, e.g.*, *Bd. of Trustees of Leland Stanford Junior Univ. v. Roche Molecular Sys.,
Inc.*, 583 F.3d 832, 842 (Fed. Cir. 2009); *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d
1245, 1253 (Fed. Cir. 2000).

CONFIDENTIAL MATERIAL REDACTED

### 2. The Remainder of the Agreement Confirms the District Court's Interpretation of the Broad Granting Language to Include Child Patents.

Walker does not dispute the plain meaning of the second sentence of the Purchase and Sale paragraph. Rather, Walker characterizes this sentence as "merely an inaccurate declarative statement" that it urges this Court to ignore. (WD Br. 24.) The primary basis for Walker's position is its view that the plain and unambiguous meaning of the second sentence of this paragraph is purportedly inconsistent with the intentions of the parties as reflected in the four corners of the Settlement Agreement and the extrinsic evidence.

However, the second sentence is not "merely an inaccurate declarative statement." For example, its inclusion of "applications … filed … after the Effective Date" necessarily transfers applications that could not be listed on Schedule A. Nor does the second sentence conflict with the first to create an ambiguity, as Walker asserts. (*Id.* at 34-35.) It is a key provision to which Walker agreed. (*See* A0867 ("                                                    ); A1787.) It is linked to the first sentence through its use of the term "Transferred Patents" and further defines the scope of that term. As such, it is an important part of the most important paragraph of the parties' Patent Purchase Terms. It eliminates any possible ambiguity as to whether child and other related patents and applications are transferred. Under Delaware law, the Settlement Agreement must be

24

CONFIDENTIAL MATERIAL REDACTED

considered in its entirety, giving effect to each provision. *See Osborn*, 991 A.2d at 1159; *Shell Oil*, 498 A.2d at 1113. This Court should reject Walker's attempt to ignore well-settled Delaware law.

Moreover, pursuant to common practice, assignment agreements often use more than one sentence to define the scope of the assignment. *See Hendrie*, 98 U.S. at 553-54; *see also, e.g.*, Intell. Prop. L. Bus. Law § 13:2 (2012 ed.) ("When [an] assignment relates to a patent or a patent application, the assignment should address whether the assignment includes other related patents or patent applications, such as continuations, continuations-in-part, or reissues."); *cf. Minco, Inc. v. Combustion Eng'g, Inc.*, 95 F.3d 1109, 1117 (Fed. Cir. 1996) ("The express reference to past infringement in the MAC assignment expanded the scope of the term 'right, title, and interest' to encompass the right to sue for prior infringement."). The Purchase and Sale paragraph followed this common practice.

Many other sentences in the Settlement Agreement are of the same character. For example, the parties define

To disregard such sentences as mere commentary would deprive much of the Settlement Agreement of meaning.

Walker's position also ignores the consistency between the broad granting language of the Purchase and Sale paragraph and the rest of the Agreement.

### a.   The "Delivery" Paragraph and Schedule B

The "Delivery" paragraph in the Settlement Agreement required



(A0920; A1840.)   The form at Schedule B assigns "[a]ny and all improvements disclosed in" each named application, "all … patents that have been or shall be issued … on any of said improvements," all "continuing" applications, *and* "all causes of action … relating to any inventions or discoveries described therein." (A0924; A1844.)

The form's broad language again expresses the parties' intent to assign all patents and applications related to the applications to be listed in the short form assignments, which include at least all applications on Schedule A.  Walker has never contended otherwise.  The reference to "continuing" applications clearly expresses the intent to assign continuations-in-part.  *See* 37 C.F.R. § 1.53(b) ("A continuing application … may be a continuation, divisional, or continuation-in-part application …."); *see also Regents of Univ. of N.M. v. Knight*, 321 F.3d 1111, 1119-20 (Fed. Cir. 2003) (Assignment of "all right, title and interest" in inventions and "any and all divisions, reissues, continuations and extensions thereof" includes continuation-in-part applications.); *Gerber Scientific Int'l, Inc. v. Satisloh AG*, No.

26

3:07-CV-1382, 2009 WL 2869705, at *4 (D. Conn. Sept. 2, 2009) (Assignment of "continuations and extensions" unambiguously includes continuations-in-part.).

Walker's construction of the Purchase and Sale paragraph squarely contradicts the plain meaning of the Delivery paragraph and Schedule B. To conclude that Walker would promise to execute these short form assignments, which expressly transfer child patents, if the Purchase and Sale paragraph did not also assign such patents contradicts logic.[6]

### b. The Scheme of Schedule A

The structure of Schedule A confirms the intent to transfer entire families. For example, Schedule A lists 11 abandoned patent applications. (A0923; A1843.) For these applications, rights to related patents and applications are the only meaningful interest Walker could assign.[7] Unless the families of these 11 applications are transferred, listing these 11 applications on Schedule A is meaningless.

---

[6] Walker's subsequent and unilateral modification of the short form assignments has no bearing on Schedule B's inclusion in the Settlement Agreement. *Cf. Park-In Theatres, Inc. v. Paramount-Richards Theatres, Inc.*, 90 F. Supp. 730, 732 (D. Del. 1950) (form "incorporated by reference" into agreement is binding on the parties even though unexecuted), *aff'd*, 185 F.2d 407 (3d Cir. 1950).

[7] Compare Schedule A, (A0923; A1843), with Appendix B of the Settlement Agreement, (A0888-919; A1808-39), which purports to list patent rights licensed by eBay. No abandoned application is listed in Appendix B.

Further, Walker's argument that only the applications expressly listed on Schedule A are transferred would result in both Walker and eBay owning different applications with identical disclosures. It makes no sense for Walker to transfer a patent to eBay but retain rights in a continuation describing identical subject matter. (*See* A2681; A2683; A1465 ¶ 4; A1470-77.) There is no indication that the parties intended such an anomalous result—a result that is against public policy.

Walker argues that, by finding that patents and applications related to those on Schedule A were transferred, the District Court creates a conflict "with the overall plan of Schedule A" and "renders meaningless the scope and format of Schedule A." (WD Br. 27-28.) This so-called plan is nothing more than attorney argument. There is no evidence as to any special meaning for the format of Schedule A. Nor is there explanation in the Agreement as to why certain patents were included on Schedule A, and others were not. Intent should not be inferred here—especially when it would be based on an interpretation by Walker's litigation counsel and not based on the Agreement itself or any evidence from those responsible for drafting it.

Walker disregards the terms of the Agreement when it argues that since eBay drafted it, it should be construed adverse to eBay. (WD Br. 26.) In paragraph 41 the parties agreed

28

Further, Delaware law disfavors this doctrine, particularly in the context of a contract between sophisticated parties. *See Shell Oil*, 498 A.2d at 1114 (characterizing the doctrine as a rule "of last resort," and holding that "the justification for applying such rule [sic] pales in a situation, like the instant one, where the terms of an agreement resulted from a series of negotiations between experienced drafters"). Indeed, the case cited by Walker mentions this doctrine only in *dicta* and relies upon authority explaining that the doctrine is to be applied to adhesion (e.g., insurance) contracts. *See Kuhn Constr., Inc. v. Diamond State Port Corp.*, 990 A.2d 393, 397 (Del. 2010) (citing *Penn Mut. Life Ins. Co. v. Oglesby*, 695 A.2d 1146, 1151 (Del. 1997)); *see also Penn Mut.*, 695 A.2d at 1149-50.

### c.     The Parallel Definition of Licensed "Patent Rights"

The District Court also properly relied on the similar licensing provision in the Settlement Agreement. (A0012-13.) That provision defines licensed patents by listing some by number and others by their relation to the enumerated patents: including their "entire families … [and] … all of their parents, continuations, continuations-in-part, [etc.]." (A0869-70; A1789-90.) In other words, for both the licensed patents and the assigned patents, Walker and eBay defined the scope of the patent rights at issue by enumerating some patents and broadly including all

29

related patents, a common method of drafting in assignment and license forms. Contrary to Walker's argument, (WD Br. 28), that does not "undermine" the District Court's interpretation.

The parallel licensing provision also rebuts Walker's argument that if all related patents were assigned, the parties could have listed just three applications. (*See id.* at 27.) It is reasonable and common to take a more cautious approach, as the Agreement does in describing licensed "Patent Rights" as "any patents and applications … owned or controlled by Walker Digital," "***including***" two specified patents, ***and*** their "entire families," and "***including*** … all of their parents, continuations, continuations-in-part, [etc.]," ***and*** "patents claiming priority to ***any*** of the foregoing," ***and*** "all foreign counterparts"; and then Walker also lists patents and applications in Appendix B. (A0869-70 (emphases added); A1789-90.)

### d. The Assignment of Causes of Action

The Agreement also expressly transfers: "(iii) any and all causes of action relating to any of the inventions or discoveries described in the Transferred Patents." (A0920; A1840.) The use of "inventions" and "discoveries" assigns causes of action on child patents. *See, e.g.*, *MHL TEK, LLC v. Nissan Motor Co.*, 655 F.3d 1266, 1271 (Fed. Cir. 2011) (Assignment of "inventions and discoveries" in parent application broadly assigns child patents and even unrelated patents that claim common subject matter.).

30

### e. The _____ Paragraph

The

(A0920; A1840.)   This provision contemplates the Purchaser, eBay, filing and prosecuting future applications based on the Transferred Patents and further shows the intent of the parties that eBay would own such future applications.

### f. The "Seller Warranties" do Not Introduce any Ambiguity Regarding the '359 Patent.

Contrary to Walker's argument, its litigation warranty in the "Seller Warranties" paragraph is not inconsistent with its assignment of the '359 patent.  It is undisputed that the '359 patent issued on February 7, 2012.  Accordingly, the District Court correctly found that "[t]he '359 patent was not in litigation at the time of the Settlement Agreement."  (A0013 n.8.)  Therefore, assignment of the

subsequently-issued '359 patent and its then-pending application to eBay is not

inconsistent with the Seller Warranties paragraph.[8]

### g. No Reservation of Rights

The Purchase and Sale paragraph concludes by broadly stating that the

"Seller reserves no rights whatsoever in the Transferred Patents." (A0920;

A1840.) To construe this paragraph as reserving for Walker rights to child patents,

like the '359 patent, would directly contradict these provisions.

### C. The Parol Evidence, if Considered, Supports an Intent to Transfer Patent Families.

As demonstrated above, the terms of the Settlement Agreement

overwhelmingly show that the parties intended to transfer entire patent families.

Therefore, it is not proper to consider extrinsic evidence. However, if considered,

such evidence further demonstrates this intent.

### 1. Parol Evidence is Inadmissible Where the Four Corners of an Agreement Unambiguously Express the Parties' Intent.

"Parol evidence may not be used to interpret a contract or search for the

parties' intentions where the contract is clear and unambiguous on its face."

*Peden*, 886 A.2d 1278, at *2; *see also Eagle Indus.*, 702 A.2d at 1232 ("If a

---

[8] To the extent this provision is relevant to the intent of the parties it is discussed below in Section II.A.2 in connection with the 313 Case and the '056 and '470 patents.

32

contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract or to create an ambiguity."); *Rhone-Poulenc*, 616 A.2d at 1195 ("A contract is not rendered ambiguous simply because the parties do not agree upon its proper construction.").

The Settlement Agreement also contains

(A0879; A1799.) Under Delaware law, this merger clause further bars consideration of parol evidence. *See, e.g.*, *RTN Investors, LLC v. RETN, LLC*, No. 08C-04-007-JRJ, 2011 WL 862268, at *13 & n.204 (Del. Super. Ct. Feb. 10, 2011); *Hyansky v. Vietri*, No. 14645-NC, 2003 WL 21976031, at *4 (Del. Ch. Mar. 28, 2003) (holding that merger clause prohibits consideration of "extrinsic evidence, in the form of oral agreements leading up to the execution of the Agreement").

While Delaware law recognizes two limited exceptions, neither applies here. *See Oglesby v. Conover*, No. K10C-08-017-RBY, 2011 WL 3568276, at *3 (Del. Super. Ct. May 16, 2011) ("Under Delaware contract law, a merger clause can be set aside if either of the two exceptions to the parol evidence rule are applicable[:]

33

… (1) ambiguous terms in the contract exist; (2) and fraud exists.").  No party has alleged fraud in connection with the Settlement Agreement, and the terms are not ambiguous for the reasons discussed above.  Therefore, the Court may not consider the parol evidence.

Mr. Tikku testified that                                    .  (A2644, at 68:13-25; A2579, at 68:13-25.)   Likewise, Walker's designated representative testified that




).)

The District Court agreed and found the terms assigning the '359 patent "clear[]" and "unambiguous."  (A0013-14.)   Accordingly, it properly did not consider parol evidence as to the '359 patent.  The District Court also correctly found that Walker failed to submit *any* parol evidence from eBay that mentioned the '359 patent.  (A0013 n.8 ("The '359 patent … was not mentioned in any of eBay's submissions.").)

CONFIDENTIAL MATERIAL REDACTED

## 2. Even if Considered, the Parol Evidence Indicates Walker Does Not Own the '359 Patent.

If the District Court had weighed the parol evidence, it would have only confirmed its decision to dismiss the actions. Indeed, despite being given "multiple opportunities" by the District Court, Walker failed to produce any parol evidence showing that it owns the '359 patent.

Ms. Li's letter did not mention the '359 patent. (A1218; A2434.) The Tikku Declaration did not mention the '359 patent. (A2067-68; A2436-37.) Mr. Tikku's deposition only confirmed what was already obvious from his declaration: eBay owns the '359 patent. While Mr. Tikku had no recollection of the '359 patent specifically, (A2647, at 78:1-12; A2582, at 78:1-12), he explained why his declaration did not mention the '359 patent. Specifically, Mr. Tikku testified


(A2657-58, at 121:11-123:22; A2592-93, at 121:11-123:22; *see also* A2658-59, at 124-126; A2593-94, at 124-126.) One of only two conclusions can be drawn from Mr. Tikku's testimony: Either Walker asked him to include the '359 patent in his declaration, and he did not because eBay owned it; or Walker never asked him to include the '359 patent, thereby conceding that eBay owned it. This is not surprising considering, during negotiations, eBay edited the Purchase and Sale paragraph to clarify it would own

such future patents "whether filed by Seller or Purchaser and whether filed before, on, or after" the execution of the Settlement Agreement. (A1118; A1060 ¶ 4; A1063.)

## II. WALKER FAILED TO PROVE IT HAS STANDING IN THE 313 CASE, IN WHICH THE '056 AND '470 PATENTS ARE ASSERTED.

The District Court correctly dismissed the 313 Case because Walker failed to satisfy its burden of proving that it owns the '056 and '470 patents. The unambiguous transfer language in the Purchase and Sale paragraph and Schedule B show that Walker assigned to eBay all rights it had in the '056 and '470 patents. To the extent that the transfer language is alleged to contradict the Seller Warranties, the transfer language trumps because it is directed at the primary purpose of the Patent Purchase Terms in the Agreement. To the extent the District Court considered the parol evidence, it correctly found that evidence to be equivocal and insufficient to establish standing. (A0015.)

### A. The Settlement Agreement Unambiguously Assigned the '056 and '470 Patents.

#### 1. The Broad Transfer Language of the "Purchase and Sale" Paragraph and the Agreement as a Whole Show Intent to Transfer Patents Related to Those on Schedule A.

As stated above in Section I.B.1, the Purchase and Sale paragraph in the Patent Purchase Terms of the Settlement Agreement unambiguously assigns to

36

eBay all patents claiming priority from, or related to, any application described on Schedule A. It is not disputed that the '056 and '470 patents are continuations-in-part of, claim priority from, are derived from, and are related to three Schedule A applications. Therefore, they are assigned to eBay.[9] Other provisions of the Settlement Agreement confirm that Walker assigned to eBay continuations-in-part and other patents claiming priority from or related to applications and patents described on Schedule A, as explained above in Section I.B.2.

### 2. The Seller Warranty Provision Does Not Introduce any Ambiguity Regarding the Definition of Transferred Patents.

In the "Seller Warranties" paragraph, Walker represents and warrants to eBay that none of the Transferred Patents is subject to a validity challenge in litigation. (A0921; A1841, at 3.1(e).) The District Court noted that Walker's representation was incorrect as to the patents asserted in the 313 Case, but held that this "seeming conflict does not render performance of the contract impossible or meaningless," and a standard warranty clause should not be elevated above the "unambiguous granting language—the clear purpose of the document." (A0014.) The District Court is correct.

---

[9] The District Court omitted from its opinion the '056 patent's relationship to the '684 application, (A0007), presumably because the District Court referenced the corresponding patent numbers, and the '056 patent's priority claim to that application misstates the patent number, (A0155).

"'The meaning inferred from a particular provision cannot control the meaning of the entire agreement if such an inference conflicts with the agreement's overall scheme or plan.'" *Riverbend*, 55 A.3d at 334-35 (citation omitted); *see also Dow Chem. Co. v. Nova Chems. Corp.*, 458 Fed. App'x 910, 914 (Fed. Cir. 2012) (the Court "'must give effect to all terms of the instrument, must read the instrument as a whole, and, if possible, reconcile all the provisions of the instrument'" (quoting *Elliott Assocs. v. Avatex Corp.*, 715 A.2d 843, 854 (Del. 1998))). Rather than adopting Walker's proposed interpretation, which "creates an inconsistency" and renders the second sentence of the granting language mere "surplusage," the Court should "prefer an interpretation that harmonizes the provisions in [the] contract." *GRT, Inc. v. Marathon GTF Tech., Ltd.*, No. 5571-CS, 2012 WL 2356489, at *4 (Del. Ch. June 21, 2012); *see also Axis Reinsurance Co. v. HLTH Corp.*, 993 A.2d 1057, 1063 (Del. 2010) (recognizing the "controlling rule of construction … that where a contract provision lends itself to two interpretations, a court will not adopt the interpretation that leads to unreasonable results, but instead will adopt the construction that is reasonable and that harmonizes the affected contract provisions").

Here, the provisions may be harmonized by recognizing that a warranty merely allocates risk. *See, e.g.*, *Council of Dorset Condo. Apartments v. Dorset Apartments*, No. 90C-10-269, 1992 WL 240365, at *3 (Del. Super. Ct. Sept. 24,

1992) ("Such a warranty is '[a]n assurance by one party to agreement of existence of fact upon which other party may rely. It is intended precisely to relieve promisee of any duty to ascertain facts for himself, and amounts to promise to indemnify promisee for any loss if the fact warranted proves untrue.'" (quoting Black's Law Dictionary 1586 (6th ed. 1990))). Here, the complicated task of determining whether the validity of any of the many interrelated patents from Walker's assigned families was currently being litigated was allocated to the "Seller," Walker, along with many other warranties and representations. Consequently, the promisee, eBay, has some protection from the costs and inconveniences of any such litigation. Walker's warranty is not meaningless. It does not generate an ambiguity, nor render performance impossible, as Walker asserts.

The warranty clause does not exclude any patents from the assignment—not patents in litigation, and not child patents or other related patents. It merely protects eBay from costs or risks incurred by acquiring patents whose validity is being challenged in litigation.

### B. The Record Supports the District Court's Finding That the Parol Evidence is "Equivocal" and Insufficient to Establish Standing.

As demonstrated above, the terms of the Settlement Agreement overwhelmingly show that the parties intended to transfer entire patent families.

39

As a result, it is not proper to consider extrinsic evidence of the parties' intent. However, if considered, this Court must review with deference the District Court's findings regarding this evidence.

### 1.    Standard of Review

The District Court concluded that Walker's parol evidence was "equivocal" and insufficient to establish standing.  (A0015; *see also* A0025 n.1 ("the court ultimately found the parol evidence to be unpersuasive ….").)  These findings are to be reviewed with deference. *Honeywell Int'l Inc. v. Air Prods. & Chems., Inc.*, 872 A.2d 944, 950 (Del. 2005) ("To the extent the trial court's interpretation of the contract rests upon findings extrinsic to the contract, or upon inferences drawn from those findings, our review requires us to defer to the trial court's findings, unless the findings are not supported by the record or unless the inferences drawn from those findings are not the product of an orderly or logical deductive reasoning process."); *see also AT&T Corp. v. Lillis*, 970 A.2d 166, 169-70 (Del. 2009); *Peden*, 886 A.2d 1278, at *2.

### 2.    Delaware Law and the Settlement Agreement's Merger Clause Properly Preclude Consideration of Parol Evidence.

Both Delaware law and the Settlement Agreement's merger clause preclude overriding clear contractual language in favor of equivocal parol evidence of prior oral agreements, or subsequent documents that fail to formally amend the

40

Settlement Agreement or assign back the patents. Walker's parol evidence relating to the '056 and '470 patents at best suggests that two negotiators recognized the plain meaning of the Purchase and Sale paragraph, discussed it, and made no changes to that language. That sort of equivocal evidence is squarely barred by the merger clause.

> **3. The Parol Evidence Undermines Walker's Position That Only the Applications Listed on Schedule A Were Transferred.**

Walker relies on evidence from eBay including Ms. Li's letter, the Tikku Declaration, and the Tikku Deposition. This evidence refutes Walker's position that only applications listed on Schedule A were transferred. Walker declined to offer direct evidence of its own intent and even argued that the intent of Mr. Pridham, its lead negotiator, was irrelevant. (A3487.) The few emails produced by Walker are, at best, equivocal. Moreover, much of the parol evidence proffered by Walker comprises "backward-looking evidence gathered after the time of contracting [that] is not usually helpful." *Eagle Indus.*, 702 A.2d at 1233 n.11; *see also id.* ("[R]elevant extrinsic evidence is that which reveals the parties' intent ***at the time they entered into the contract***."). In short, there is no clear evidence supporting Walker's position.

### a. Ms. Li's Letter Does Not Support Walker's Position.

Ms. Li's letter does not acknowledge or address the language or meaning of the Settlement Agreement. (A1218; A2434.) The letter, dated December 19, 2012, states that eBay is not the owner of the '056 and '470 patents, but does not say why. It does not state that the Settlement Agreement did not transfer the patents to eBay and does not state that eBay has never owned the '056 and '470 patents. It does not indicate Ms. Li's authority to make any legally binding statements concerning the ownership of these patents. The District Court ultimately found this letter ambiguous. (A0014 n.9.) In sum, Ms. Li's terse letter does not support Walker's theory that only applications on Schedule A were transferred.

### b. The Tikku Declaration Does Not Support Walker's Position.

The Tikku Declaration similarly does not help Walker. The Tikku Declaration does not recite or refer to the language from the Settlement Agreement. (A2067-68; A2436-37.) Other than the '056, '470, and '942 patents, the Tikku Declaration is silent as to continuations and continuations-in-part not listed on Schedule A but related to patents and application on Schedule A. There is no reasonable construction of the Settlement Agreement that excludes only these three patents from the transfer.

42

Rather than address the language and terms of the Settlement Agreement, the Tikku Declaration refers to

(*Id.* ¶ 4.)

Nothing in the Tikku Declaration suggests an intent to transfer only patents on Schedule A.    To the contrary, Mr. Tikku's specificity suggests that

Such an agreement would only be necessary if the parties knew the Agreement assigned families of the patents and applications on Schedule A.

However, Walker emphatically denies any oral agreement.    (A2740-41.) Walker also argues that the intent of its lead negotiator, Mr. Pridham, is irrelevant, and on that ground opposed having him deposed on these issues.[10]    (A3487.)    By the same reasoning, Mr. Tikku's subjective intent, and recollections of his discussions with Mr. Pridham, are irrelevant.

---

[10] Mr. Tikku is also not competent to testify to Mr. Pridham's intent and the statement in his declaration on that subject is, likewise, irrelevant.

CONFIDENTIAL MATERIAL REDACTED

There is also no evidence that either party's executive who approved and signed the Agreement was told of, or agreed to, any such oral carve-out.  Mr. Tikku                                                                      .  (A2636, at 34:19-35:19; A2645-46, at 72:20-73:6; 76:18-77:23; A2571, at 34:19-35:19; A2580-81, at 72:20-73:6; 76:18-77:23.)  Nor is there any evidence that a carve-out was ever presented to Mr. Ellenthal, who signed the Agreement for Walker.

Finally, any such oral carve-out would not be enforceable.  It would be superseded and barred by the Agreement's merger clause.  It also appears that the parties may have purposefully decided not to reduce any such agreement to writing due to a lack of time.  Specifically, emails submitted by Walker show that this issue was discussed only on December 9th, the day the Agreement was signed, and in a related email Mr. Pridham

(A2685; A2307.)

Thus, the Tikku Declaration's

                does not support Walker's argument that only applications expressly listed on Schedule A were transferred.  To the contrary, by demonstrating that both parties were aware that the plain language of the Settlement Agreement would transfer related patents, in addition to those expressly listed on schedule A, but chose not to change that language, Mr. Tikku's Declaration supports Defendants' position.

### c.   The Tikku Deposition Refutes Walker's Position.

Mr. Tikku's deposition is consistent with his declaration and shows that at least Mr. Pridham and Mr. Tikku knew, the day before the Settlement Agreement was signed, that it would assign the '470 and '056 patents, but did not revise the Agreement to carve out any patents.  Mr. Pridham and Walker both objected to Mr. Pridham being deposed on this issue.  But Mr. Tikku testified that


(*See* A2647, at 79:20-80:3; A2677, at 199:22-200:4; 201:1-10; A2582, at 79:20-80:3; A2612, at 199:22-200:4; 201:1-10.)   This demonstrates Walker's willingness to transfer patents while they are asserted in litigations,[11] as well as Walker's subjective understanding of the language of the Agreement as communicated to eBay.  *See United Rentals, Inc. v. RAM Holdings, Inc.*, 937 A.2d 810, 835-36 (Del. Ch. 2007) ("[T]he forthright negotiator principle provides that, in cases where the extrinsic evidence does not lead to a single, commonly held understanding of a contract's meaning, a court may consider the subjective understanding of one party that has been objectively manifested and is known or should be known by the other party." (internal footnotes omitted)); *see also US West, Inc. v. Time Warner Inc.*, No.

---

[11] *See also, e.g.*, A2460 ¶ 3; A2462-538 (Walker agreement settling another lawsuit that transfers patents in litigation).

CONFIDENTIAL MATERIAL REDACTED

14555, 1996 WL 307445, at *11 (Del. Ch. June 6, 1996) (noting that "the subjective understanding of a contracting party is not ordinarily a relevant datum").

However, Mr. Tikku testified that

(A2648, at 82:8-11; A2655, at 112:10-11; A2583, at 82:8-11; A2590, at 112:10-11.) Walker does not dispute that. (A1050.)

To the contrary, through Mr. Tikku, eBay has consistently maintained the position that

(A2644, at 68:13-25; 66:10-67:11; A2579, at 68:13-25; 66:10-67:11.) Further, Mr. Tikku's testimony as to the conspicuous absence of the '359 patent from his declaration demands the conclusion

(A2657-58, at 121:11-123:22; A2592-93, at 121:11-123:22; *see also* A2658-59, at 124-126; A2593-94, at 124-126.)

Likewise, Walker's designated representative, Mr. Ellenthal, admitted that

Specifically, he testified that,

46

(A3218-19.)  Walker does not cite to any testimony that states that only applications expressly listed on Schedule A were intended to be transferred.

### d.    Walker's Belated Delivery of Executed Assignments Does Not Show an Intent to Transfer Only the Applications on Schedule A.

Walker relies on its failure to deliver short form assignments for related patents not on Schedule A, and eBay's purported failure to request them, as evidence that related patents were not assigned.  (WD Br. 42.)  The parties' conduct is merely evidence of Walker's pattern of breaching its contractual obligations regarding the short form assignments, such as its obligations to

(it delivered them nearly a month late) in the form attached as Schedule B (it altered that form without explanation). There is no evidence that eBay considered those breaches sufficiently harmful to require a response.

Walker is well-aware that an assignment of a grandparent application and its family is sufficient to establish ownership of a child patent application.  (*E.g.*, A1784-85 ¶ 17; A2045-54 (the assignment recorded by Walker for the '359 patent

47

is an assignment of a grandparent application no. 09/211,099).)  Therefore, eBay

did not require any additional short form assignments to establish ownership of the

other transferred patents.

### e.     Walker's Emails are Equivocal.

The emails documenting some of the negotiations leading to the Settlement

Agreement do not clearly support Walker's theory that only the patents and

applications listed on Schedule A were assigned.  The emails demonstrate that

shortly before the Settlement Agreement was signed, eBay edited the second

sentence of the Purchase and Sale paragraph to include all related applications,

"whether filed before, on, or after the Effective Date."  (A1118; A1060 ¶ 4;

A1063; A2116 ¶ 5; A2365.)  This undercuts Walker's position that this sentence is

"merely an inaccurate declarative statement."  (WD Br. 24.)  To the contrary, the

sentence was important enough to be the subject of negotiations until shortly

before the Settlement Agreement was executed, and included future applications

that could not possibly be listed on Schedule A.  Further, in apparent reliance on

the modifications made to this sentence, eBay has filed at least 19 such

applications.  (A1465-66 ¶ 6; A1498-1536; A1784 ¶ 16; A2005-43.)

Walker argues that the email string supports its position because the emails

describe

However, this cuts both ways.  There is no reason to remove the abandoned

applications from Schedule A unless the inclusion of those abandoned applications on Schedule A would have transferred related patents. Thus, the emails are unclear.

It is equally unclear why, if the parties were in agreement as to what was intended to be transferred, the parties still have not modified the Agreement in a writing formally executed in accordance with the merger clause; or why eBay has not simply assigned back the patents-in-suit. That alone is reason to doubt any such intent.

### C. The Alleged Agreement as to the '056 and '470 Patents Cannot be Squared With any Objective, Reasonable Construction of the Settlement Agreement.

To the extent the parol evidence suggests that the parties did not intend to transfer the '056 and '470 patents, there is no reasonable construction of the Settlement Agreement that allows such a result. The alleged ambiguity in the Settlement Agreement is whether the "Transferred Patents" are limited to those patents and applications expressly listed in Schedule A. Mr. Tikku's testimony regarding the '056 and '470 patents does nothing to clarify this ambiguity. Walker has expressly disavowed the oral carve-out alleged by Mr. Tikku (which is in any case barred as a matter of law in light of the merger clause) and has not identified any objective, reasonable construction of the Settlement Agreement supporting a carve-out applicable to some—but not all—patents related to those listed on

49

CONFIDENTIAL MATERIAL REDACTED

Schedule A. Thus, the alleged agreement on the '056 and '470 patents is really not an agreement at all. The '359 patent is illustrative. Mr. Tikku implicitly testified that

Walker also claims to own the '359 patent under its theory that only those applications expressly listed on Schedule A were transferred. Accepting the illusory agreement regarding the '056 and '470 patents, without identifying an actual construction of the Agreement that supports that result, would leave two parties claiming ownership of the '359 patent. As such, any purported agreement related to the '056 and '470 patents alone fails to resolve the disputed scope of the assignment.

### III. THE EXECUTED ASSIGNMENTS INDEPENDENTLY TRANSFER ANY REMAINING RIGHTS TO THE PATENTS-IN-SUIT.

On January 3, 2012, almost one month after signing the Settlement Agreement, Walker executed and delivered assignments listing all applications on Schedule A, including parents of the patents-in-suit.

Nevertheless, the executed short form assignments clearly assigned to eBay any rights Walker still had in the applications listed on Schedule A and their child patents. They specifically assigned "the entire right, title and interest, in and to:" (1) "any and all improvements disclosed in [the '426, '149 and

'684 applications];" (2) "all … patents that have been or shall be issued … on any of said improvements … and all other patent applications that have been filed or shall be filed … on any of said improvements …;" and (3) "any and all causes of action … relating to any inventions or discoveries described therein." (A0966-68; A1853; A1855.)

Not only does this broad assignment support the language of the Settlement Agreement, it alone is sufficient to transfer the families of the listed applications to eBay—including the patents-in-suit. The assignment of all inventions or improvements disclosed in a patent application includes the assignment of child patents and applications. *Hendrie*, 98 U.S. at 553-54 (An assignment of "all the right, title, and interest … in the 'said invention,' … and also all right, title, and interest which may be secured to him from time to time … carries the entire invention and all alterations and improvements and all patents whatsoever, issued and extensions alike ...."); *see also Regents*, 321 F.3d at 1119-20 (Broad language assigning right, title, and interest in inventions, including "any and all divisions, reissues, continuations, and extensions" includes continuation-in-part applications.).

By asserting that the patents-in-suit claim priority to the filing date of applications listed in those assignments, Walker admits that the patents-in-suit are each for an "invention or improvement disclosed" in the assigned applications.

51

Consequently, if the Settlement Agreement did not assign any and all rights Walker had in the patents-in-suit, the subsequently executed assignments did. Further, the executed assignments were recorded with the Patent Office and are the only publicly available documents showing the transfer of rights from Walker to eBay.

### IV. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION BY DISMISSING WALKER'S CLAIMS WITH PREJUDICE.

#### A. Standard of Review

The District Court's dismissal with prejudice is reviewed for abuse of discretion. *Sicom Sys., Ltd. v. Agilent Techs., Inc.*, 427 F.3d 971, 975 (Fed. Cir. 2005) (applying the law of the pertinent regional circuit, the Third Circuit). The District Court's holding must be upheld unless this Court finds it to be arbitrary or unreasonable, or the record contains no evidence upon which the District Court rationally could have based its decision. *See, e.g.*, *In re VistaCare Grp., LLC*, 678 F.3d 218, 232 (3d Cir. 2012) ("Under the deferential abuse of discretion standard, we will reverse 'only where the … court's decision is arbitrary, fanciful, or clearly unreasonable—in short, where no reasonable person would adopt the … court's view.'" (citation omitted)). The District Court's factual findings are reviewed for clear error. *E.g.*, *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993).

52

## B. The District Court Retained Jurisdiction to Dismiss Walker's Claims With Prejudice.

Walker asserts that the District Court did not have jurisdiction to enter the dismissals with prejudice on October 25, 2013, because Walker had previously filed notices of appeal.  (WD Br. 43; *see* A0023-26.)  Walker is wrong.  The District Court did not lose jurisdiction prior to its October 25 orders because its previous orders did not dispose of Defendants' counterclaims and, thus, were not final under 28 U.S.C. § 1295(a)(1).  Alternatively, pursuant to Federal Rule of Appellate Procedure 4(a)(4)(B)(i), Walker's notices of appeal were not effective until the District Court completely disposed of Defendants' Rule 59(e) motions.  Therefore, Walker's notices of appeal did not divest the District Court of jurisdiction until October 25, 2013, when Defendants' counterclaims were expressly mooted and their Rule 59(e) motions for dismissal with prejudice were decided.

### 1. The July 19 Notices Were Premature Because of Defendants' Pending Counterclaims.

By statute, parties may appeal only a "final decision of a district court."  28 U.S.C. § 1295(a)(1); *see also Pause Tech. LLC v. TiVo Inc.*, 401 F.3d 1290, 1292 (Fed. Cir. 2005).  A notice of appeal filed before a final judgment is entered is not effective until entry of judgment.  Fed. R. App. P. 4(a)(2).

The June 19 orders, (A0017), did not expressly address Defendants' counterclaims or find that there was no longer a matter in controversy. *See Pause Tech.*, 401 F.3d at 1293. "For a judgment to be appealable to this court, the district court must issue a judgment that **decides or dismisses all claims and counterclaims for each party** or that makes an express Rule 54(b) determination that there is no just reason for delay." *SafeTCare Mfg., Inc. v. Tele-Made, Inc.*, 497 F.3d 1262, 1267 (Fed. Cir. 2007) (emphasis added). Pending counterclaims preclude jurisdiction absent certification under Rule 54(b). *See Nystrom v. TREX Co., Inc.*, 339 F.3d 1347, 1351 (Fed. Cir. 2003) (A "'judgment that does not dispose of pending counterclaims is not a final judgment.'" (citation omitted)). Even moot or potentially-moot counterclaims must be dismissed or otherwise disposed of before a judgment is final. *Pause Tech.*, 401 F.3d at 1292-94 (rejecting argument that counterclaims can be "impliedly dismissed" as "contrary to the text and purpose" of the explicit exception to finality in Fed. R. Civ. P. 54(b)).

Moreover, the October 16 orders still did not address Defendants' counterclaims. Even if they had, Defendants filed motions for clarification, which are considered by the Third Circuit as Rule 59(e) motions, tolling the time for appeal. *See Basalem Township v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314-15 (3d Cir. 1994) ("There is no doubt that Township's June 23, 1992, letter could

be considered to be a motion to amend pursuant to Rule 59(e).  The letter expressly requested that the district court clarify whether its order applied to all parties and whether it dismissed the case without prejudice."); *accord Maxus Energy Corp. v. United States*, 31 F.3d 1135, 1139 (Fed. Cir. 1994) ("The universal rule is that, regardless of its label, any [timely filed motion] which seeks a substantive change in the judgment will be considered a Fed. R. Civ. P. 59(e) motion.").

Walker's notices of appeal, therefore, did not divest the District Court of jurisdiction until October 25, 2013, when the District Court declared Defendants' counterclaims moot.  (A0024 ¶ 1.)

### 2.    The July 19 Notices Were Ineffective Because of the Pending Rule 59(e) Motions.

Even if the District Court's June 19 orders were final, a notice of appeal filed while a Rule 59(e) motion is pending is ineffective until the motion is decided.  Fed. R. App. P. 4(a)(4)(B)(i) & 4(a)(4)(A)(iv).  Defendants' timely-filed requests for dismissal with prejudice tolled the time for filing a notice of appeal. *See Kraft, Inc. v. United States*, 85 F.3d 602, 604-05 (Fed. Cir. 1996); *Maxus Energy*, 31 F.3d at 1139; *see also*, *Sack v. Low*, 478 F.2d 360, 362 n.l (2d Cir. 1973) ("The Advisory Committee notes make it plain that a principal purpose of Rule 59(e), which was added in 1946, was to make clear that a district court had

power to amend a judgment dismissing without prejudice so that the dismissal should be with prejudice ….").

Therefore, the July 19 Notices did not deprive the District Court of jurisdiction to amend its orders. *See Bd. of Tr. of Bay Med. Ctr. v. Humana Military Healthcare Servs., Inc.*, 123 Fed. App'x 995, 997 (Fed. Cir. 2005) (unpublished) (holding that notice of appeal was "not effective until the district court had disposed of the motion for reconsideration on the merits" (citing Fed. R. App. P. 4(a)(4)(B)(i))). District courts may continue exercising their jurisdiction when faced with premature or ineffective notices of appeal. 16A C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3950.5 (4th ed.) ("The doctrine that the filing of a notice of appeal 'confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal' should not prevent the district court from acting, after the filing of a premature notice of appeal, to take the steps that will ripen the notice of appeal. The weight of authority holds that an appeal from a clearly non-appealable order fails to oust district court authority."); *see also id.* § 3950.4. The District Court's October 16 orders did not address Defendants' Rule 59(e) motions; therefore, the motions were not disposed of pursuant to Federal Rule of Appellate Procedure 4(a)(4)(B)(i), and Walker's notices of appeal remained ineffective.

Therefore, the District Court maintained jurisdiction to enter its October 25 Memorandum Order.

### C.    Walker had "Multiple Opportunities" to Cure the Standing Defect and Failed to do so.

There is ample evidence in the record to support the District Court's dismissal with prejudice, even though the dismissal is for lack of standing. (A0026.)  First, Walker had "multiple opportunities" to cure the standing defect and failed.  *See Sicom Sys.*, 427 F.3d at 980 (affirming dismissal with prejudice after "Sicom ha[d] twice attempted and twice failed to establish standing").  Second, the District Court gave Walker a full and fair opportunity to cure its standing deficiency.

At the February 7, 2013 hearing, the District Court found Ms. Li's letter insufficient to prove Walker's standing, given the language of the Settlement Agreement.  (A3436 ("I would agree, what we got from eBay isn't satisfactory."); A3440-41; A3445; A3458.)  However, rather than decide the motions to dismiss on the current record, the District Court gave Walker another chance to establish standing.  The District Court required Walker to provide a legally significant statement of non-ownership from eBay, on which Defendants could rely in a court as a clear and definitive expression of Walker's ownership of the patents-in-suit. (A3440-41 ("[T]he Court requires some affidavit, something that truly represents a legal affirmation of a party's position ...."); *see also* A3445; A3458.)  To allow

Walker the opportunity to obtain compelling proof establishing ownership, the District Court granted what would become a four-month-long stay of all cases. (A3458; A3464-67.)

After the February 7, 2013 hearing, Walker submitted only the Tikku declaration, in which Mr. Tikku made no statements regarding ownership of the patents-in-suit. (A2066-68; A2436-37.) The Tikku Declaration addressed only a portion of the patents at issue, and attested merely to the subjective intent of the parties. (*Id.*) The Declaration did not purport to disavow eBay's ownership of any patent or application and clearly was not an "assignment back" of any patents. When deposed, Mr. Tikku never made any statements regarding the present ownership status of the patents-in-suit, despite continuing to assert the parties did not subjectively intend to transfer certain patents. In fact, Mr. Tikku never even mentioned the '359 patent. Walker objected to deposition of any individuals who participated in the negotiation on behalf of Walker. (A2070-74; A3483-84; A3486-87; A3489-90.)

Walker thus failed, despite numerous opportunities provided by the District Court, to establish its standing. The District Court rightly held that dismissal with prejudice was justified because Walker had several months to cure its lack of standing, and it submitted only selective pieces of evidence that fell short of meeting its burden of proof. *See Sicom Sys.*, 427 F.3d at 980; *Textile Prods., Inc.*

*v. Mead Corp.*, 134 F.3d 1481, 1485 (Fed. Cir. 1998) ("The district court correctly dismissed the infringement claim with prejudice because Textile had its chance to show standing and failed."); *accord Telepresence Techs., LLC v. Upper Deck Co.*, No. SA-CV-00-183-AHS, 2001 WL 36239744, at *3 (C.D. Cal. Mar. 29, 2001) ("[T]he Court dismisses this action with prejudice …. Plaintiff .... has had its chance to establish standing and has failed.").[12]  These cases contradict Walker's assertion that dismissals must be without prejudice whenever a defect is theoretically curable.

Given its failure to date, it is unlikely Walker can cure its standing defect. But controlling law does not require such a showing where, as here, a plaintiff had ample prior opportunity to cure. *See Sicom Sys.*, 427 F.3d at 980.  Although *Sicom* affirmed the dismissal with prejudice of a second action, the opportunity to file a second action is not necessary where a stay has been granted to provide an opportunity to cure.  The District Court's decision to stay these cases while Walker attempted to produce evidence of its standing achieved both judicial economy and fairness.  Other courts have likewise found that a temporary stay has the same effect as a first dismissal without prejudice. *See Adventus Ams., Inc. v. Calgon*

---

[12] *See also Medtronic Sofamor Danek USA, Inc. v. Globus Med., Inc.*, 637 F. Supp. 2d 290, 306, 308, 315 (E.D. Pa. 2009) (dismissing with prejudice patent claims of plaintiffs who lacked standing); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 405, 420 (S.D.N.Y. 2011) (dismissing with prejudice plaintiff's complaint for lack of standing after plaintiff failed three times to cure deficiencies).

*Carbon Corp.*, No. 3:08-CV-497-RJC-DCK, 2009 WL 2998094, at *5 (W.D.N.C. Sept. 15, 2009) ("A temporary stay … would afford the parties time to amend or supplement the record with any evidence needed to show standing on all six patents."); *Joint Mktg. Int'l, Inc. v. L&N Sales & Mktg., Inc.*, No. 05-CV-4818-DLI-VVP, 2006 WL 1995130, at *5 (E.D.N.Y. July 14, 2006) (granting motion to dismiss with prejudice but providing a twenty-day stay of the dismissal for plaintiff to cure).

The District Court recognized that dismissal with prejudice was appropriate and necessary here to prevent unfair expense and prejudice to Defendants.[13]  *See, e.g.*, *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 628 F.3d 157, 162-64 (5th Cir. 2010) (affirming dismissal with prejudice because court has discretion to dismiss with prejudice if dismissal without prejudice would result in "unfair prejudice to the other side"); *Smith v. Sabol*, No. 1:CV-11-1697, 2013 WL 2371193, at *2 (M.D. Pa. May 30, 2013) (dismissing action with prejudice in response to Rule 41(a) motion filed by plaintiff one and a half years into litigation: "It is well within a court's discretion to grant the dismissal with prejudice where it

---

[13] Walker's motion to dismiss voluntarily the 140-142 Cases under Federal Rule of Civil Procedure 41(a)(2) states that it will take "all actions necessary to confirm its ownership" without explaining why Walker had not already taken such actions, nor indicating what such actions would be.  (A2920.)  Walker's Opening Brief here likewise presents no evidence cure is likely.

would be inequitable or prejudicial to defendant to allow plaintiff to refile the action.").  Absent an abuse of discretion, this Court must affirm.

Walker also appears to assert that the dismissals with prejudice are improper because the "implications" of the dismissals are "unclear."  (WD Br. 47-48.) Walker cites no authority for this proposition.  The "implications" of the dismissals for Walker and/or eBay in future patent litigation under the various hypothetical ownership scenarios Walker posits would be advisory at best and are not the District Court's or this Court's concerns.   "Deciding whether and how prior litigation has preclusive effect is usually the bailiwick of the second [district] court."  *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2375 (2011); *see also* 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4405 (2d ed.) (A court does not "get to dictate to other courts the preclusion consequences of its own judgment.").

The District Court's dismissal with prejudice was not clearly arbitrary or unreasonable, but was instead a rational decision that the record fully supports. Therefore, the District Court's exercise of its discretion to dismiss Walker's claims with prejudice should be affirmed.

### D.    Walker Waived any Right to Respond to Defendants' Motions for Clarification.

Walker asserts that the District Court violated Delaware Local Rule 7.1.2(b) by not permitting Walker 14 days to respond to Defendants' motions for

clarification. (WD Br. 53.) Walker ignores the fact that it advised counsel for Defendants that it did not plan to file a response and that it did not oppose the filing of the motions. (A3594; A3598.) Walker, therefore, waived a response and cannot now be heard to argue otherwise.

Regardless, the District Court's decision did not cause Walker any harm. Violations of local rules are subject to a harmless error analysis. *See In re SimmsParris*, 448 Fed. App'x 268, 271 (3d Cir. 2011) (unpublished); *Hill v. Williamsport Police Dept.*, 69 Fed. App'x 49, 52 n.4 (3d Cir. 2003) (unpublished). District courts are given "broad discretion in interpreting, applying, and determining the requirements of their own local rules and general orders." *United States v. Gray*, 876 F.2d 1411, 1414 (9th Cir. 1989); *accord In re Ricoh Co. Patent Litig.*, 661 F.3d 1361, 1370 (Fed. Cir. 2011) (recognizing that "'[d]istrict courts have broad discretion in interpreting and applying their local rules'" (citation omitted)).

Walker had a full and fair opportunity to respond to Defendants' arguments for dismissal with prejudice before Defendants moved for clarification. (*See* A3076-77.) Defendants did not present any new arguments in the motions for clarification, and Walker does not explain what additional arguments it would have made had it responded to the motions for clarification.

Because the District Court's October 16 orders did not address Defendants' requests for dismissal with prejudice, Defendants' motions for clarification necessarily related to Defendants' motions to dismiss with prejudice filed in July. Therefore, Walker's argument that Defendants' October 22 motions for clarification did not request dismissal with prejudice is inapposite.

Even if Walker had not waived its response, the District Court's purported violation of the local rule was harmless and no substantial injustice occurred.

## V.    CONCLUSION

For the reasons set forth above, Defendants respectfully request that this Court affirm the District Court's decision to dismiss the 313 Case and the 140-142 Cases with prejudice, for lack of standing.

Respectfully submitted,

KLARQUIST SPARKMAN, LLP

/s/ Jeffrey S. Love
Klaus H. Hamm
Jeffrey S. Love
Kristen L. Reichenbach
Philip Warrick
Garth A. Winn
One World Trade Center
Suite 1600
121 S.W, Salmon Street
Portland, OR 97204
(503) 595-5300

Counsel for Defendants-Appellees
Amazon.com, Inc. and Zappos.com, Inc.

63

MCKOOL SMITH, P.C.

/s/ John B. Campbell
John B. Campbell
300 W. 6th Street, Suite 1700
Austin, Texas 78701
(512) 692-8700

Counsel for Defendant-Appellee
American Airlines

POTTER ANDERSON & CORROON LLP

/s/ Philip A. Rovner
Philip A. Rovner
Jonathan A. Choa
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000

Counsel for Defendant-Appellee
Barnes & Noble, Inc.

FISH & RICHARDSON P.C.

/s/ Ahmed J. Davis
Ahmed J. Davis
Linhong Zhang
1425 K Street, N.W., 11th Floor
Washington, D.C. 20005
(202) 783-5070

Neil McNabnay
1717 Main Street, Suite 5000
Dallas, TX 75201
(214) 747-5070

Counsel for Defendant-Appellee
Expedia, Inc.

64

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that, on this the 12th day of May, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered users, and a copy was electronically served upon the following:

Anthony G. Simon
Benjamin R. Askew
Michael P. Kella
Stephanie H. To
Timothy D. Krieger
THE SIMON LAW FIRM, P.C.
800 Market St., Suite 1700
St. Louis, MO 63101
(314) 241-2929
asimon@simonlawpc.com
baskew@simonlawpc.com
mkella@simonlawpc.com
sto@simonlawpc.com
tkrieger@simonlawpc.com

Marc A. Fenster
Benjamin T. Wang
RUSS, AUGUST & KABAT
12424 Wilshire Blvd., 12th Floor
Los Angeles, CA 90025
(310) 826-7474
mfenster@raklaw.com
bwang@raklaw.com

Timothy E. Grochocinski
INNOVALAW, P.C.
1900 Ravinia Pl.
Orland Park, IL 60462
teg@innovalaw.com

Michael Cardozo
PROSKAUER ROSE LLP
11 Times Square
New York, NY 10036
mcardozo@proskauer.com

*Counsel for Appellant*

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL

CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439, and paper copies will be served upon the counsel listed above.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Adrienne R. Acra-Passehl

Adrienne R. Acra-Passehl
GIBSON MOORE APPELLATE SERVICES
421 East Franklin Street, Suite 230
Richmond, VA  23219

## CERTIFICATE OF COMPLIANCE
### With Type-Volume Limitation, Typeface Requirements,
### And Type Style Requirements

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

        this brief contains <u>13,971</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

        this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word</u> in <u>14 Times New Roman</u>.

May 12, 2014

        /s/ Jeffrey S. Love             
        KLAUS H. HAMM
        JEFFREY S. LOVE
        KRISTEN L. REICHENBACH
        PHILIP WARRICK
        GARTH A. WINN
        KLARQUIST SPARKMAN, LLP
        One World Trade Center
        Suite 1600
        121 S.W. Salmon Street
        Portland, OR 97204
        (503) 595-5300

        Counsel for Defendants-Appellees
        Amazon.com, Inc. and Zappos.com, Inc.